(No. 4634— )

ANTHONY SPARACINO, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 21, 1957.*

JOHN R. SNIVELY, Attorney for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

Tolson, C. J.

On July 15, 1954, Anthony Sparacino, an inmate of the Joliet Penitentiary, filed a complaint seeking damages for an injury received by him, while working with the "Yard Gang".

The complaint is in Three Counts, and alleges:

### Count I

(a) Failure to promulgate safety rules.

(b) Failure to exercise care for safety of claimant.

(c) Failure to instruct claimant.

(d) Failure to furnish a safe place to work.

(e) Failure to furnish proper tools.

(f) Failure to furnish adequate help.

### Count II

Violation of statutory duty in compelling claimant to work outside prison walls. (Ill. Rev. Stats., Chap. 108, Sec. 44.)

### Count III

Malpractice by physicians employed by the State.

The facts of the case are as follows:

Anthony Sparacino was received at the prison on January 31, 1951. His initial physical examination indicated that he was in excellent condition, and he was placed in healthy group "A". This classification meant that he could do any kind of work assigned to him.

Claimant worked in several departments, and at his request was transferred to the "Yard Gang". On November 3, 1952, he signed the "Honor Pledge", which permitted him to work outside the prison walls.

On November 5, 1952, a detail of twenty prisoners were assembled to go over to the old quarry, near the Diagnostic Center, for the purpose of sorting out a pile of iron, which had accumulated there. Claimant was a member of this detail.

Officer Brule, who was in charge, directed six men, including claimant, to pick up a railroad rail, and move

it to a stock pile some distance away. The weight of the rail was estimated to be between 400 and 500 pounds.

When the group reached the stock pile, five of the inmates released the load momentarily before claimant. The rail then slipped out of his hands, fell across the arch of his right foot, and caused the injury complained of.

Claimant was taken to the prison hospital, and was examined by Dr. McSweeney. Two X-Rays were taken, and it was discovered that he suffered from a fracture of the internal cuneiform bone. Dr. McSweeney ordered a splint placed on the foot, and hot and cold packs were administered to reduce the swelling. Claimant was hos-. pitalized for a period of 35 days, and, on December 7, 1952, additional X-Rays were taken to check the condition of the injury.

The hospital records, received in evidence, state that the internal cuneiform bone was fusing properly, and that the fracture was in good position and alignment.

Claimant was discharged from the hospital, and returned to the "Yard Gang". He answered sick call on many occasions thereafter, complained of pains in his foot and side, and also stated he suffered headaches. He alleges that this pain was caused by the injury, which he contends is permanent. Sometime later, claimant was given lighter work as a night elevator operator.

At the outset, it should be pointed out that claimant is not entitled to the benefits of the Workmen's Compensation Act, as a convict is not an "Employee" under the Act. *Tiller* vs. *State*, 4 C.C.R. 243. This case must, therefore, be considered under the common law rules of negligence.

With reference to Count I of the complaint, claimant was directed to perform an ordinary act of manual labor.

No "rules" were necessary, nor were any special tools or appliances needed.

It is somewhat ironical to note that claimant, prior to commitment, was engaged in picking up and trucking junk. He was accustomed to handling heavy loads, and was physically able to do the very job assigned to him.

The transcript of evidence does not disclose why the other prisoners released the rail before claimant did, nor does claimant offer any reason why he did not release the load at the same time as his co-worker, who was directly ahead of him, and visible to him. In the absence of proof, one way or another, it may well be that this injury was the result of an accident in which no one was at fault, and in which no one could be charged with negligence.

The Court, therefore, finds that claimant has failed to prove any act of negligence in Count I on the part of respondent.

Count II alleges violation of statutory duty. (Ill. Rev. Stats., Chap. 108, Sec. 44.)

"No labor shall be performed by convicts in the penitentiary in any stone quarry or other place outside the walls of the penitentiary: Provided, this act shall not prohibit such labor being performed in quarrying stone for the use of the state by its authorized agent, nor the employment of convicts outside of the prison walls by the Department of Public Safety in labor incident to the business and management of the penitentiary."

Claimant's argument in this regard is not well taken. The junk pile, while not within the walls of the prison, was on property owned and operated by the penitentiary. The work of sorting junk was an incident in the over-all operation of the prison, and clearly falls within the language of the statute "incident to the business and management of the penitentiary".

Count III alleges malpractice by the physicians employed by the state.

An examination of the evidence discloses that claimant was immediately taken to the hospital, where he received care for a period of 35 days.

His foot was X-Rayed on three occasions to determine if progress was satisfactory. Claimant alleges that his foot should have been placed in a cast, rather than a splint, but he did not offer any medical testimony to support the charge.

Drs. McSweeney and Garris took care of claimant when he was in the hospital, and testified at the hearing of the case on behalf of respondent. Both were cross-examined by counsel for claimant, and he did not inquire of either of them, if a cast, rather than a splint, would have been the proper treatment in this case.

The hospital record, dated December 7, 1952, which was introduced in evidence, stands uncontradicted in that ''the internal cuneiform bone is taking its natural course in fusing and developing callus in the repair of the fracture. The fracture (chip) is in good position and alignment.''

During oral argument, claimant offered in evidence a statement by Dr. Samuel Behr. The second paragraph of the statement was admitted in evidence, subject to the objection of respondent.

"On examination, the patient has a bilateral, severe pes planus with marked pronation of the feet. There are palpable bony excresences over the mid tarsal joints of both feet. Pressure about any point of the mid tarsal joint of the right foot caused the patient to complain of severe pain. The patient walked with a limp. There was no atrophy of either leg on measurement. Circulation of both feet was excellent. Examination of X-Rays of the right foot revealed a mid tarsal arthritis, but no evidence of old or recent fracture."

The statement adds little to what is already in the record. There is no dispute but what claimant suffered an injury to this foot, and an arthritic condition is not an uncommon aftermath.

We, therefore, conclude that the evidence does not sustain the charge of malpractice, but, to the contrary, discloses excellent medical care and good recovery.

We have previously held that a convict can maintain an action in this Court, and that a conviction for a felony does not bar a convict from prosecuting a claim before this Court, while in such status.

In *McElyea* vs. *State*, 7 C.C.R. 69:

"The law of this state gives unto a prisoner serving a sentence in any penal institution the right to sue or be sued in the courts of this state during the period of such confinement. A convict does not lose his personal rights because of his imprisonment, although he is deprived by law of certain rights of citizenship. Therefore, as he possessed said personal rights, claimant was entitled, able and free to exercise them, even though he was confined in the penitentiary."

However, the right to maintain an action subjects claimant to the same burden of proving his case by a preponderance of the evidence, as would be required of any other claimant.

In the instant case, we find that the evidence does not support the allegations in either of the Three Counts of the complaint, and that claimant has, therefore, failed to prove his case by a preponderance of the evidence.

An award is, therefore, denied.